## UNITED STATES v. BROWN.

Fourth Division.   Fairbanks.   March 14, 1923.

### No. 856–C.

1. **Criminal Law** ⊜⟳753(2)—**Searches and Seizures—Intoxicating Liquor.**
   A deputy United States marshal, accompanied by a special prohibition officer, guided only by rumor, went upon the homestead of one Worth, without a search warrant, knocked at the door of the dwelling house, and were told by a voice within to come in, which they did. The only occupant was Brown, the defendant, and not the owner of the premises. After some conversation, one of the officers read a blank form of search warrant, which he happened to have in his possession, to the defendant; whereupon defendant stated to the officers they could search the

⊜⟳See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

premises if they wanted to. They did so and found some whisky in a container and other evidences of its presence on the premises. The officers then arrested Brown for having liquor in his possession. After he was taken to town and placed in jail the officers filed affidavits before the commissioner, and procured him to issue a search warrant to search the premises in question, which was done by the same two officers. Upon the second search they found the same evidences of liquor as on their first search, and in addition they found a still and other evidences. On the trial the defendant moved to strike the testimony and exhibits, because the same were obtained as the result of an unlawful search and seizure, and requested the court to instruct the jury to return a verdict of not guilty. *Held*, the searches and seizures in the dwelling house occupied by the defendant were in violation of his constitutional rights, the evidence was suppressed, and the jury directed to return a verdict of not guilty.

In this case, at the conclusion of the government's testimony, the defendant made a motion to strike the testimony on the part of the prosecution on the ground that it appears from the testimony that the evidence was obtained as a result of an unlawful search of the premises of defendant, and further requested the court to instruct the jury to return a verdict of not guilty.

The testimony of the government shows that the defendant was arrested on the 17th of July, 1922, by Deputy Marshal Webster, assisted by Special Prohibition Officer Seneff, on the premises occupied by the defendant, which was a homestead of one Worth, who had arranged with the defendant that he should take care of the property during Worth's absence, during the summer months, at least, although the time is not very definite as to how long he was to enjoy the property.

It appears from the testimony of the deputy marshal, and from the testimony also of Seneff, that they heard rumors that the defendant, or perhaps Worth, was conducting a still on the premises. Where these rumors came from is not shown by the testimony, nor is it shown that they were reliable. However, acting upon these rumors, Webster and Seneff together went to this property and arrived at the premises late in the afternoon of the 17th of July.

The witness Webster states that at the time he left he was going to make a search of the premises. The premises were situated about six miles from Tanana, on the right bank of the Yukon river. Upon arriving at the homestead property, they went to the cabin and knocked at the door, and were told by a

voice within to come in, which they did. Upon entering, they talked with the occupant, who was the defendant, whom they found standing somewhere in the middle of the floor, and he greeted Seneff, calling him by name, and also spoke to Webster. The assumption is that he knew both of these parties and knew their business.

Mr. Seneff undertook to tell the defendant that he was informed there was a still being conducted on these premises and that was the reason of his visit. Either at that time or later— the testimony is not clear on that—Mr. Webster read to the defendant, in the cabin, a blank form of a search warrant, which was not issued by any court, and which did not contain the name of the defendant, nor did it, so far as the testimony discloses, contain a description of the property to be searched, nor a description of the property which it was expected he was to seize.

Either at that time or later the witness Seneff saw a bottle sitting on the table, which, upon examination by him, he discovered to contain whisky. The defendant said to them that, if they had come a day earlier, he might have given them some whisky to drink, but that it was now exhausted.

I believe it was Mr. Seneff who went outside afterwards, and looked around close to the cabin, and discovered an empty demijohn, which, upon smelling it, appeared to contain odors of alcohol.

While the men were together in the cabin, and probably after Seneff stated that he heard the defendant was conducting a still on these premises, the defendant, as a way of emphasizing the fact that he was innocent of any such charge, stated to them they could search the premises if they wanted to.

They did then go and search outside, and discovered some sugar, 150 pounds or so, and some corn by the greenhouse, and also some mash in a few barrels in a state of fermentation in the greenhouse, and, I think, the liquor that was introduced in evidence, about a quarter of a barrel. I do not know how much the barrel contained; the evidence is not clear on that point.

While this search was in progress by these two officers, Webster went down to the defendant's cabin and notified him that he was under arrest. Thereafter they gathered up what they had seized, took them down, and put them in a boat belonging

to the defendant, and escorted him down to Tanana, where the commissioner resides.

When they arrived at Tanana the witness Webster swore to an affidavit for search warrant, and included in it the property which was told to him by Seneff, as I understand it, they had seized, the list of the property. Thereafter Commissioner Howard made out a search warrant, and I think at this time an affidavit or a complaint was filed against the defendant for the unlawful possession of liquor and property designed for use in violation of the National Prohibition Act (27 USCA).

Thereafter, on the 19th of July, the witnesses Webster and Seneff, acting presumably under the search warrant that was issued on the 17th after their return from the premises, and in the absence of the defendant, who was probably in jail, went to the premises of the defendant again, which was the homestead property of Worth, and made further search, and at that time discovered a still and some other articles which might be used for the production of intoxicating liquor, especially some barley in the barn, I think, and perhaps some more corn in the barn also, and the still and coils, and I think a cooling cask.

The original papers in the case have been introduced in evidence—that is to say, the complaint, amended complaint, affidavit for a search warrant, search warrant, and any other papers that are required to be sent up here as a transcript—and it would appear from an inspection of those papers that the property that was seized was seized under a search warrant that was issued on the 17th of July. However, the testimony of the witnesses on the part of the government, the two officers before mentioned, shows clearly that they had no search warrant at that time, and that the search warrant that was issued was issued after they had first visited the property in the manner outlined heretofore on the 17th of July.

Guy B. Erwin, U. S. Atty., of Fairbanks, and L. R. Gillette, U. S. Atty., of Twisp, Wash.

T. A. Marquam, of Fairbanks, for defendant.

CLEGG, District Judge. Under this state of facts the court is required to decide whether the search and seizure made by the prosecuting witnesses, Webster and Seneff, was lawful to the extent that the evidence they obtained by the search might be used in evidence against the defendant.

The three counts of the indictment charge the defendant, first, with possession of alcoholic liquors; secondly, with the crime of having in his possession property designed for use and being used by him in the unlawful manufacture of alcoholic liquors; and, third, for the crime of manufacturing alcoholic liquors for beverage purposes. They are all based upon these transactions that have been outlined in the statement that I have heretofore made. The first is alleged to have been committed on the 17th of July, the second on the 19th, and the third on the 19th.

The counts are drawn under the National Prohibition Act, which contains this provision with reference to residences: The latter part of section 25 of title 2 of the National Prohibition Act, or Volstead Act (27 USCA § 39), says:

"No search warrant shall issue to search any private dwelling occupied as such, unless it is being used for the unlawful sale of intoxicating liquor, or unless it is in part used for some business purpose such as a store, shop, saloon, restaurant, hotel or boarding house. The term 'private dwelling' shall be construed to include the room or rooms used and occupied, not transiently, but solely as a residence in an apartment house, hotel, or boarding house."

Then in the latter part of section 33 (27 USCA § 50), after stating that the possession of liquors after February 1, 1920, by any person not legally permitted under this title to "possess liquor shall be prima facie evidence that such liquor is kept for the purpose of being sold, bartered, exchanged, given away, furnished, or otherwise disposed of in violation of the provisions of this title," it says:

"But it shall not be unlawful to possess liquors in one's private dwelling while the same is occupied and used by him as his dwelling only and such liquor need not be reported, provided such liquors are for use only for the personal consumption of the owner thereof and his family residing in such dwelling and of his bona fide guests when entertained by him therein."

Now it is conceded here by the government, both in the opening statement of the government and in the testimony, that this particular cabin into which the officers first entered was his dwelling. And according to the section of the statute that I first read it says:

"No search warrant shall issue to search any * * * dwelling * * * unless it is being used for the unlawful sale of * * * liquor."

So it is clear that no search could be made of this cabin under a search warrant, because it is not contended that this particular cabin which the defendant occupied was being used for the unlawful sale of liquor. He is not charged in any of the counts of the indictment with the sale of liquor. And if a search warrant could not be legally issued against this cabin it is clear that a search of that particular cabin by the officers without a search warrant would be illegal, and therefore the testimony concerning anything about the cabin, or in the close neighborhood thereof, such as a jar found outside, which smelled as though it had contained liquor recently—any evidence of that kind would have to be stricken on that ground. Nor should any search have been made of the entire premises under the circumstances in the case by the officers on the 17th of July, 1922, without a search warrant.

The only evidence as to why they made a search of that particular property at that time was based upon rumors that they heard from some unknown sources, and it has been held so often by courts of last resort that a search warrant cannot be lawfully issued, based upon rumors, but it must be upon actual knowledge, and it therefore appears clear that the search of the property under those circumstances—that is to say, of any part of the property—would be unlawful and illegal.

The defendant contends that the buildings on the property are so close to the cabin as to constitute an entire residence, but I am not going to take that position. I take the position that no search could be made by the witnesses who have testified, at that time, of this property, when it was initiated and started and commenced and carried on merely upon unfounded, perhaps, rumors that they heard from people that a still was being conducted on the property. The law does not contemplate that deputy marshals or enforcement officers shall trespass upon people's property in the guise of enforcing the prohibition laws, either of the National Prohibition Act or the Bone Dry Act (48 USCA §§ 261–291 [U. S. Comp. St. §§ 3643b–3643r]) applicable to Alaska. There is provision made in both acts how search warrants may be issued for the search of property which is being used for the commission of a crime, and the courts, as I have said, unanimously hold that no search warrant could be issued where it is not based upon actual knowledge of the party making application therefor. It places upon the judicial offi-

cers a judicial duty that they, the judicial officers, shall determine when a search warrant shall issue, and it does not leave it to the discretion of a deputy marshal to determine that for themselves, or any other enforcement officer.

Now the government contends that the search was made by these men at that time with the consent of the defendant; that is to say, when the officers arrived there and Seneff accused the defendant of conducting a still on the premises, that the defendant said that he could make a search of it if he wanted to, or that both of them could. The witness Webster, however, says that in searching the premises he acted upon the authority conferred upon him by the commissioner before he started from Tanana, in giving him the blank search warrant hereinbefore referred to, and stating to him that was all the authority he needed. However, Seneff does not say he acted upon that theory or with the same purpose as Webster. He says that he searched the premises because the defendant gave him permission; otherwise, he would not have searched it.

In another part of his testimony he states that his method of investigation is that he goes to the person who is supposed to be violating the liquor laws, and talks to him and then investigates, looks over the property, so that it is hard to reconcile his testimony that he merely searched this property on the invitation of the defendant, when he says in another portion of his testimony that his usual practice is, in making an investigation, to talk with the person accused and then look over the property.

However, the court finds that the defendant did not invite either Seneff or Webster to search the property in question. On the contrary, all that the defendant did was to state that, as far as he was concerned, the deputies could search the property. That cannot be construed to be a permission on his part, when he is confronted with two law enforcers, two officers of the law, and charged, without notice and under the circumstances in this case, with being a law violator. If it was anything, it was a mere acquiescence on his part, founded upon the belief that the officers who were then present on his premises, without invitation or without any warrant, were going to search the property anyway, and it can be in no sense construed to be a consent on his part, which amounts to a waiver of his constitutional rights.

In order for a man to legally waive his rights, or his constitutional rights, or legal rights, the testimony must show at least

that he has knowledge of his rights, and that he intends to relinquish them before it can be said that he waived his constitutional rights, and there is no testimony of that kind in this case. The court does not know whether the defendant knows anything about his constitutional rights; there has been no testimony introduced on that subject.

So that under the circumstances, without further discussion, I am going to call the attention of the officers in connection with this case to another section of this Code before I get through.

Now an act supplemental to the National Prohibition Act was passed on November 23, 1921. Section 6 of that act says:

"That any officer, agent, or employee of the United States engaged in the enforcement of this act, or the National Prohibition Act, or any other law of the United States, who shall search any private dwelling as defined in the National Prohibition Act, and occupied as such dwelling, without a warrant directing such search, or who while so engaged shall without a search warrant maliciously and without reasonable cause search any other building or property, shall be guilty of a misdemeanor and upon conviction thereof shall be fined for a first offense not more than $1,000, and for a subsequent offense not more than $1,000 or imprisoned not more than one year, or both such fine and imprisonment." 18 USCA § 53.

Officers ought to take notice of all the laws on this subject, and inform themselves as to the legal manner in which they should enforce them.

I have tried heretofore, in the opinion which has been cited by counsel for defendant, to state what I considered the law upon the matter of searching dwellings, but it appears that no notice has been taken of it by the officers.

I hold that the search and seizure made in this case on both dates was a violation of the constitutional rights of the defendant. If such things were permitted, it would be subversive of the principles of free government. I will ask the jury to return a verdict of not guilty on all counts as requested.